**CORL LAW PRACTICE, P.L.L.C.**
Robert Corl, Esq.
Attorney for Plaintiffs
1490 S. Price Road, Suite 104
Chandler, AZ 85286
CorlLawPractice@outlook.com
(480)417-9281
AZ Bar No. 031371

# IN THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF ARIZONA

| | |
|---|---|
| ROBERT MICHAEL ELLIS, an individual; and PACIFIC BUILDING SUPPLY, LLC, an Arizona limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> VOLVO GROUP NORTH AMERICA, LLC; and VOLVO CONSTRUCTION EQUIPMENT AND SERVICES OF CALIFORNIA, <br><br> Defendants. | No._____ <br><br> **COMPLAINT** <br><br> *Jury Trial Demanded* <br><br><br> Assigned to:_____ |

Plaintiffs, Robert Michael Ellis ("Plaintiff" or "Ellis"), and Pacific Building Supply, LLC as their Complaint against Defendants Volvo Group North America, LLC and Volvo Construction Equipment and Services of California (collectively "Defendants"), allege as follows:

## PARTIES

1. Plaintiff, Robert Michael Ellis ("Ellis"), at all times relevant hereto, was a resident of Maricopa County, Arizona.

1

2. Plaintiff, Pacific Building Supply, LLC ("Pacific"), is an Arizona limited liability company, a corporation organized and existing under the laws of the State of Arizona and is registered to conduct business in and is currently doing business in the State of Arizona.

3. Upon information and belief, Defendant, Volvo Group North America, LLC ("Volvo") is a corporation organized and existing under the laws of the State of North Carolina and is registered to conduct business in and is currently doing business in the State of Arizona.

4. Upon information and belief, Defendant, Volvo Construction Equipment and Services ("VCES") of California is a corporation organized and existing under the laws of the State of California and is registered to conduct business in and is currently doing business in the State of California and the State of Arizona.

5. Robert Michael Ellis is the sole proprietor of Pacific Building Supply, LLC.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction claims pursuant to 28 U.S.C. § 1332, based on Diversity of Citizenship for this interstate breach of contract claim.

7. Venue is proper in this judicial district under 28 U.S.C. §1391(b)-(c) because Volvo maintains offices in this district, conducts business in this district, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this district, and because the alleged breach of contract and subsequent financial losses occurred in this district.

8. The District of Arizona has personal jurisdiction over Volvo because it

maintains offices in this District or does business in Arizona and in this District, and because many of the acts complained of and giving rise to the claims alleged herein occurred in Arizona and in this District.

9. The District of Arizona has personal jurisdiction over VCES because it maintains offices in this District or does business in Arizona and in this District, and because many of the acts complained of and giving rise to the claims alleged herein occurred in Arizona and in this District.

10. Defendants caused events in Arizona giving rise to Plaintiffs' cause of action as stated in this Complaint.

11. The amount in controversy is $106,735.

12. Jurisdiction and Venue are proper in this Court.

## GENERAL ALLEGATIONS

13. That, on or about March 1, 2021, Plaintiff Ellis and Defendant VCES entered into a contract ("Contract"), whereby Pacific Building Supply was to purchase equipment from VCES; to wit, one Certified Used 2014 Volvo L 90 Wheel Loader, Unit #184819 ("Unit") for a total purchase price of Eighty-Thousand, Three-Hundred and Sixty-Four Dollars ($80,364).

14. That VCES made certain promises regarding the state of the equipment and the purported inspections and mechanical work completed to ensure that the Unit complied with the standards set forth to be Volvo certified and bear the label as such.

15. That the Unit has never functioned properly, and contrary to its purported Volvo Certification, the Unit shipped with a 5 year old bad battery, original filters, and a bad transmission.

16. At issue is the willful breach of contract through false advertisement and inducement to purchase faulty equipment claiming to be Volvo Certified used equipment when no such certification process was completed.

17. In purchasing this equipment, Ellis was informed that as part of this program the equipment is run through the shop and completely serviced including changing all fluids, filters, etc., checking out the hydraulic system, the brakes, and the overall functioning of the equipment.

18. As part of the VCES sales pitch, Ellis was informed that the sales representative was very proud of this certification, that they install a sticker on the outside of the equipment to show that it has been completely certified by their service department, and he was even offered a picture of the sticker.

19. The Unit's expired battery, filters and inoperable transmission provide prima facie evidence that no such certification process was completed.

20. In March 2021, VCES originally delivered the Unit to a job site in Prescott, Arizona where Pacific was working on a project.

21. VCES contacted Mr. Ellis of Pacific to let him know that the Unit had been delivered.

22. The day after delivery, Pacific operators showed up to the job site and tried to start the Unit. It would not start as it had a dead battery.

23. At this point, Ellis instructed his operator to go to the local parts house and purchase a new battery; whereupon it was discovered that the Unit's battery was five years old.

24. Ellis contacted Phil Ransom ("Ransom") at VCES to advise him that the battery was dead and to inform him that he had to purchase a new battery.

25. At that time, Ellis questioned Ransom with respect to the certification process he had been previously informed had been completed on the Unit, as it had been advertised as Volvo re-certified even though it turned out the battery was five years old; obviously beyond its life expectancy.

26. If the Unit had been properly inspected and re-certified, the expired battery should have been identified during the inspection and re-certification process. Ransom assured Ellis that it was a mistake and "must have slipped through the cracks."

27. Ransom then agreed to pay for the battery.

28. On or about Tuesday March 9, 2021, after replacing the battery, the Unit operated for approximately one hour prior to malfunctioning again.

29. After one functioning hour, the Unit immediately gave a red flag warning on the computer stating that a "Re-GEN" was needed; meaning that it had to go through a cleaning cycle for the emissions. This normally takes about 30 minutes. In this case, it took over four hours. After four hours of down time waiting for the computer to reset, the operator contact Ellis to advise him of the situation.

30. Ellis again called Ransom to explain that there was yet another problem with the equipment. Ransom said he would get a mechanic out there right away. He called

Arnold Equipment Company ("Arnold") in Phoenix, Arizona and they sent a mechanic to attend the Unit at the jobsite.

31. The Arnold mechanic worked on the Unit for a few hours and got it to reboot and go through its cycle so that Pacific could use the equipment.

32. The Unit functioned for approximately two days and then repeated the same malfunction.

33. Again, a mechanic from Arnold was dispatched to repair the computer. At this point Pacific was able to complete the project in Prescott, Arizona, and had the equipment transported to Pacific's construction yard in Phoenix, Arizona.

34. Within a week Pacific engaged in another project in Laveen, Arizona and immediately they began to experience the same types of equipment problems with the Unit.

35. The Arnold mechanic was again dispatched to fix the Unit again. Now on three separate occasions, Pacific needed mechanical service to get the Unit to function, and each time a malfunction occurred, work was delayed until the Unit was restored to functionality.

36. By this point, Pacific had lost five days of construction time due to this Unit's inability to function without mechanical intervention.

37. On each occasion in which the Unit malfunction, Pacific has had to pay wages and in the case of the Prscott contract, Pacific incurred additional costs for housing because the employees were staying at the jobsite overnight.

CORL LAW PRACTICE, P.L.L.C.
1490 S. Price Road, Suite 104
Chandler, AZ 85286

38. Around this time Ransom at VCES stopped taking Ellis's phone calls. Ellis could not leave a message because Ransom's voicemail box was full and he would not answer the phone.

39. At this point in time, Ellis was advised to contact Justin Martin ("Martin"). Martin advised Ellis that Ransom would be calling him back but that call never occurred.

40. The local mechanic at Arnold informed Ellis that the Unit would need a new transmission and possibly a new computer which will cost approximately $36,000.

41. With the Unit permanently malfunctioning, Pacific was forced to rent a Volvo Wheel Loader from Arnold for approximately $5,000 per month.

42. On or about July 2, 2021, Ellis sent a demand letter to VCES, demanding a refund for the purchase of equipment.

43. VCES attorneys responded denying any liability.

## COUNT I

## BREACH OF CONTRACT

1. Plaintiffs reassert and re-allege each and every paragraph of this Complaint as if restated fully herein.

2. The Sales Contract ("Contract") and Volvo Certified Used Equipment Guarantee ("Guarantee") provided by VCES to Ellis contain the terms that govern the relationship between Plaintiffs and Defendants.

3. Defendants failed to adhere to the terms of the Contract and Guarantee made to Plaintiffs in soliciting Plaintiffs' purchase of equipment from Defendants.

4. Plaintiffs suffered damages from the breaches of the Contract and Guarantee

made by Defendants.

5. In addition to the cost of equipment, Plaintiff suffered additional out-of-pocket costs as a result of Defendants' breaches, including but not limited to the cost of renting replacement equipment, lost earnings, and employee per diem expenses.

6. Plaintiffs are entitled to recover these costs.

7. Plaintiffs are entitled to recover their legal costs and fees from Defendants pursuant to A.R.S. § 12-341.01(A).

## COUNT II

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY AND FITNESS

1. Plaintiffs reassert and re-allege each and every paragraph of this Complaint as if restated fully herein.

2. Defendants, as a merchant for goods of this kind, were aware of the intended use of the Unit by Plaintiffs as a loader.

3. Indeed, Defendants specialize in the equipment sold to Plaintiffs and intended for use as a loader, its ordinary purpose for which such units are sold.

4. Defendant's Unit was not merchantable for its ordinary use as a loader nor for any other purpose due to numerous mechanical defects.

5. Defendants owed Plaintiff the duty of fitness for the purpose for which the unit was sold as a result of the implied warranty of merchantability and fitness.

6. Defendants are liable to Plaintiffs for their losses due to their sale of equipment not merchantable or fit for its ordinary use.

## COUNT III

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

7. Plaintiffs reassert and re-allege each and every paragraph of this Complaint as if restated fully herein.

8. In Arizona, every agreement contains a duty to act fairly and in good faith. This duty is implied by law and has the same force as if it were set forth in writing.

9. Defendants owed Plaintiff the duty of good faith and fair dealing as a result of the Contract and Guarantee.

10. This duty requires that neither party do anything that prevents the other from receiving the benefits of the agreement.

11. Plaintiffs have made multiple demands both verbally and written, to the Defendants, to adhere to the Guarantee, but to no avail.

12. By refusing to acknowledge responsibility for and remediate Plaintiff for the losses suffered as a result of their breach, Defendants acted in bad faith, thereby breaching the implied covenant of good faith and fair dealing and damaging Plaintiffs in an amount to be determined at trial.

## COUNT IV

## UNJUST ENRICHMENT

1. Plaintiffs reassert and re-allege each and every paragraph of this Complaint as if restated fully herein.

2. Plaintiffs are entitled to restitution because Defendants have benefitted by the payments made by Plaintiffs but Plaintiffs have received no benefit in turn.

3. To the extent that there is no adequate remedy at law to recover the amounts by which Plaintiffs have been impoverished, he is entitled to recover the amounts by which Defendants have been unjustly enriched.

## COUNT V

## PROMISSORY ESTOPPEL

1. Plaintiffs reassert and re-allege each and every paragraph of this Complaint as if restated fully herein.

2. Defendants made certain promises to Plaintiffs, including, without limitation, the promise to provide guaranteed used equipment which would function for the purpose intended.

3. It was reasonably foreseeable to Defendants that Plaintiffs would rely on those promises.

4. Plaintiffs relied on those promises.

5. Defendants did not deliver on those promises by refusing to compensate Plaintiffs for their losses as a result of the faulty equipment sold by Defendants to Plaintiffs.

6. As a result of Plaintiffs' justifiable reliance on the promises of Defendants, Plaintiffs incurred losses and suffered detriment in the amounts of the purchase price of the equipment, delivery, sales tax, rental of substitute equipment, per diem losses and legal fees.

7. Defendants should be bound by their promises to Plaintiffs.

WHEREFORE, Plaintiffs pray that this Court order such relief as is necessary to make them whole, including, without limitation:

A. Declaring the acts and practices complained of herein constitute a willful breach of contract;

B. Declaring the acts and practices complained of herein constitute a breach of the implied warranties of merchantability and fitness;

C. Declaring the acts and practices complained of herein constitute a breach of the duty of good faith and fair dealing;

D. Declaring the acts and practices complained of herein resulted in Defendants' unjust enrichment;

E. Declaring that Plaintiffs are entitled to recover under the doctrine of promissory estoppel;

F. An award of damages for each count in an amount according to proof at trial;

G. An award of compensatory and punitive damages for counts wherein appropriate in an amount according to proof at trial;

H. Pre- and post- judgment interest as allowed by law;

I. Reasonable attorneys' fees, costs and other expenses as allowed by law; and,

J. For such other relief as this Court deems just.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED this 12 day of November 2021.

> **By:/s/Robert D.Corl**
> Robert Corl, Esq.
> 1490 S. Price Road
> Chandler, AZ 85286
> *Attorney for Plaintiffs*

CORL LAW PRACTICE, P.L.L.C.
1490 S. Price Road, Suite 104
Chandler, AZ 85286